Pentecostal Tabernacle of Muncie, etc. *v.*
Pentecostal Tabernacle of Muncie, etc.
[No. 18,878.  Filed December 19, 1957.]

146

*Frank B. Jaque,* of Portland, and *Alva Cox,* of Muncie, for appellant.

*Leonidas A. Guthrie, Walter G. Tanner* and *Guthrie & Tanner,* of Muncie, for appellee.

BOWEN, J.—The appellees filed an action in the court below alleging that they were the duly elected, qualified and acting trustees of the Pentecostal Tabernacle and authorized and empowered to institute and prosecute a cause of action in the name of the Pentecostal Tabernacle of Muncie, Indiana, to recover the proceeds of a certain insurance policy on church property destroyed by fire. The defendant insurance company filed an answer and affidavit by way of interpleader asking for an order of court authorizing such insurance company to pay the sum of $25,000.00 into court, and that such company be discharged from further liability on such policy to be paid by such court for the use of the parties who may be found to be entitled thereto. The appellants filed a petition to intervene in the action and an answer herein admitting that there was a fire and that such church was entitled to recover the funds represented by such insurance policy, but denying that the appellees were the duly elected, qualified and acting trustees of said church, and alleging that said appellees were not authorized and empowered to institute and prosecute this cause of action in the name of

such church or to recover the funds represented by the insurance policy.

On the pleadings in the court below issues were tendered for the determination of the court as to what group of persons were the duly elected, qualified and acting trustees of said church and properly qualified to prosecute such cause of action and to receive the proceeds of such insurance policy for and on behalf of such church. Trial was had by the court and the court rendered judgment for the appellees and adjudged and determined that the appellees, Reverend C. L. Crum, Marvin C. Stephens, Marvin Sowells, Henry Randolph, and Jerry Sell, as trustees of Pentecostal Tabernacle, were entitled to the $25,000.00 paid into the Clerk's office of the court by the insurance company pursuant to an order of the court on such insurance company's affidavit of interpleader. The appellants filed a motion for a new trial on the grounds that the finding of the court is not sustained by sufficient evidence and is contrary to law, and that the court erred in excluding certain testimony of the appellants' witnesses during the trial of said cause. Appellants' motion for a new trial was overruled and this appeal followed.

The sole error assigned for reversal is that the court erred in overruling appellants' motion for a new trial.

The parties stipulated that the Pentecostal Tabernacle was the owner of the real estate on which the church building was located which was destroyed by fire; that the defendant insurance company was liable on a certain policy of insurance and had paid into the Clerk of the court $25,000.00 thereon. The uncontradicted evidence further showed that the church in question was a sovereign autonomous body and answered to no higher governing body of ecclesiastical authority; that the appellee, Reverend C. L. Crum, came to the church as pastor about May 1, 1952; that

Clarence Sallee, James Chaffin, and Henry Chandler were trustees of the church on such date; that an election of trustees was held in September 1952 electing Clarence Sallee, James Chaffin and Marvin Stephens trustees; that a later election was held in September 1953 whereby Marvin Stephens, Raymond Wine and Reverend C. L. Crum were elected as trustees; that later Mr. Wine was replaced by one Marvin Sowells as trustee; that in late summer of 1954 Marvin Stephens, Marvin Sowells, and Reverend C. L. Crum were again elected trustees. Appellants Jones, Baldwin, Bayer and Johnson did not attend, nor did they vote in the 1954 election. Witnesses for appellee testified that the election held in 1954 was pursuant to notice from the pulpit on a Sunday morning and that the lawful membership of the Pentecostal Tabernacle who attended and voted in the 1954 election were satisfied with the notice and election of the elected officials. No question was raised within the church organization concerning the legality of the 1954 election until after the fire. Appellee Henry Randolph was elected a trustee in April 1955.

The record further shows that the appellants quit attending the church sometime between September 1953, just after Reverend C. L. Crum was elected to the board of trustees, and June or July 1954, with the exception of one Flossie Bayer and Clarence Sallee, who continued to attend the church up until the time of the fire on February 13, 1955; that on July 20, 1949, a resolution was adopted making the number of trustees five and making the pastor a trustee by virtue of his office.

The appellant asserts that the evidence was insufficient to establish the fact that there was an election held for the election of trustees in 1954 and that C. L. Crum, the minister, was not properly a member of the

board of trustees because an amendment had been adopted prohibiting him from being a member of the board of trustees. There was a conflict in the evidence on these points, and the appellee's witnesses denied that such amendment was ever adopted and the court resolved these issues against the appellant, and the reasonable inferences from the record justified the court's decision in this regard.

Seven days after the fire occurred the appellant group claimed to have mailed notices to the membership of the church of their intention to hold a meeting to elect trustees of the Pentecostal Tabernacle on February 28, 1955, which meeting was held on said date by certain persons claiming to be members of such church, and Leslie Jones, Clarence Sallee, and Holly Johnson were elected trustees at such meeting. It was disputed as to whether or not a proper representation of the membership was present on such occasion, and the court resolved this question of fact against the appellant by its decision herein, and there is evidence and reasonable inferences to be drawn therefrom which supports the trial court's determination.

When we look at the whole record before us we are presented with a situation in which a church organization which was sovereign in itself had differences arise in its membership, one of the principal differences being dissatisfaction with the pastor's statements criticizing certain persons from the pulpit, and those who were so dissatisfied voluntarily abandoned the congregation with the exception that one or two members of such group continued to attend the church, and those who did continue to attend met with the dissident group with reference to questions of church organization.

It appears from the record that at the meeting held by the group which had voluntarily abandoned the con-

gregation, which meeting was held following the fire, that only two of those persons were attending the church at the time of the 1954 election. It is significant that at no time prior to the fire did the appellants attempt to call a meeting of the membership on church property, or elsewhere, in an attempt to secure any alleged rights based upon church procedure. The evidence is convincing that the appellees and the group which they represent have served and remained in the church as faithful members at all times. The appellants contend that although they had ceased attending, they did not surrender membership in the church.

In a situation of this kind, upon the facts resolved by the trial court, we are called upon to determine whether or not the appellant group has been deprived of rights that are recognizable in a court of law under the facts shown by the record. We are not concerned with a situation wherein a question has been presented as to whether or not the appellants had pursued their alleged claims to ownership of the insurance proceeds in question by reason of an appeal to any higher governing body of the church since it is conceded on both sides that the church was sovereign in itself. Therefore, we are called upon to determine whether or not the conclusion of the trial court should be sustained that questions of discipline, faith and custom were determined and had been determined by the true congregation of the Pentecostal Tabernacle church in accordance with the rules and regulations of such church organization. While the evidence is not clear and explicit with reference to the rules and regulations of the church in question, the record does disclose sufficient proof of the discipline, faith and custom of the organization in question and there is sufficient evidence of the conclusion that the appellees had properly constituted themselves as a proper governing body of

such organization to the extent that the civil courts of this state cannot interfere, and the record does not disclose that the appellants have been deprived of any property rights to which redress may be sought in the civil courts. There is no dispute but that they voluntarily abandoned the duly constituted church organization and attempted to set up a rival congregation.

Some of the reasoning by the United States Supreme Court in considering the powers and duties of civil courts in cases arising out of church controversies, in *Watson* v. *Jones,* 13 Wall. (U. S.) 679, at p. 724, appears to be persuasive when applied to the facts in the case at bar, which is as follows:

"The second class of cases which we have described has reference to the case of a church of a strictly congregational or independent organization, governed solely within itself, either by a majority of its members or by such local organism as it may have instituted for the purpose of ecclesiastical government; and to property held by such a church, either by way of purchase or donation, with no other specific trust attached to it in the hands of the church than that it is for the use of that congregation as a religious society.

"In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. *The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation.* This ruling admits of no inquiry into the existing religious

opinions of those who comprise the legal or regular organization; for, if such was permitted, a very small minority, without any officers of the church among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the church, because they may have changed in some respect their views of religious truth." (Our emphasis)

The record is completely devoid of evidence that the appellants were forceably excluded from the church, but on the other hand, the evidence is uncontradicted that they voluntarily left the congregation in question. No claim was made in this case that either the appellees or appellants had in any sense attempted to change the customs or doctrine of the church in question, and the law is well settled that where factional differences occur the courts will give effect to the will of that part of the organization acting in harmony with the ecclesiastical laws, principles, customs, and usages which were accepted among the factions before the dispute arose. It is obvious that the major part of the difficulty in the instant case arose from the dissatisfaction by the appellants with the pastor and differences with him relating in a number of instances to remarks from the pulpit, but this court has no ecclesiastical authority to resolve such differences or to transfer the property of the church to a seceding faction.

For a court to interfere, under the circumstances shown by the record, and attempt to determine for the church congregation in question that a seceding faction of an individual church organization was right in its disapproval of the minister who had been properly and regularly selected by the

regularly constituted governing authority of the church, or for a court to attempt to determine who is right between two disputing factions, under the circumstances shown by this record, would constitute an interference with religious freedom that is guaranteed by our federal and state constitutions.

It is the duty of the courts, where property rights are involved, to determine that regular procedures have been followed in the constitution of the proper authorities of the church, but this does not establish any right in the court to serve as an umpire between two competing factions where there has been a voluntary abandonment of the church in question by one of the factions by reason of a dispute over the actions of the minister of the church body in question, so long as the record shows that the minister and the governing authorities of the church were duly and regularly constituted and installed before the dispute arose, and where there has been no claim made that the parties have attempted to change the faith, customs, doctrines or discipline of the church in question.

The Supreme Court of this state, in distinguishing the facts in *Smith et al.* v. *Pedigo et al.* (1896), 145 Ind. 361, 33 N. E. 777, 44 N. E. 363, from other cases cited by counsel for appellee in such case referred to the case of *Keyser* v. *Stansifer,* 6 Ohio 363, in the following language:

"The next case cited by appellees' counsel in support of the proposition in question, is *Keyser* v. *Stansifer,* 6 Ohio 363. That also was a suit for possession of a church-house property by Keyser and others, a small faction of a Baptist church, who had separated themselves from the church about a matter that had nothing whatever to do with the original faith upon which the church was founded. And it was held, in accordance with the rule laid down in the last-mentioned case, that in such a division of a church the property, as in ordinary voluntary associations, is held at the will

of the majority. The division, in the Ohio case, was caused by the church excluding Keyser on charges preferred against him in the course of discipline for misconduct. He afterwards got another member named Cox and some married women to join him to sue for the church edifice. The ground on which he and his associates claimed that they were the real church, was that sometime after Keyser had been excluded the church adopted new articles of faith or a creed, and abolished the old. But there is no pretence that the church had abandoned the original doctrine or faith upon which it was founded. The division arose entirely out of the exclusion of Keyser from the church in the course of discipline, and had no reference to any change or departure by the majority from the original faith on which the church had been founded."

The reasoning of the Ohio court, insofar as it relates to a type of personal difference between members of a congregation, is helpful to us in considering the circumstances in the record before us.

A careful review of all that has been presented challenging the actions and the proceedings below has failed to disclose a sufficient reason for the reversal of this judgment. The evidence was sufficient to have justified the trial court in holding that the appellants were seceders from the regular church organization in question.

The alleged errors claimed for the exclusion of testimony of certain witnesses are not properly before this court for review by reason of the fact that the appellant has failed to set out the answers in question and the objections thereto in the motion for a new trial.

For the reasons given herein the lower court did not err in overruling appellant's motion for a new trial, and the judgment is hereby affirmed.

NOTE.—Reported in 146 N. E. 2d 573.